Matter of Settlement Funding of N.Y. (2003 NY Slip Op 51638(U))

[*1]

Matter of Settlement Funding of N.Y.

2003 NY Slip Op 51638(U)

Decided on December 30, 2003

Supreme Court, Ontario County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 30, 2003

Supreme Court, Ontario County
IN THE MATTER OF THE PETITION OF SETTLEMENT FUNDING OF NEW YORK, LLC FOR APPROVAL OF TRANSFER OF STRUCTURED SETTLEMENT PAYMENT RIGHTS OF MARK ASPROULES IN ACCORDANCE WITH GOL §5-1701, ET SEQ.
Index Number 94009

Frederick G. Reed, J.
This is a petition under General Obligations Law §5-1701 et seq., (the "Structured Settlement Protection Act" or SSPA), seeking judicial approval of a payee's transfer of two future payments under a structured settlement in exchange for his present receipt of a discounted lump sum from the Petitioner.
Mark Asproules, the payee, was involved in an automobile accident and sustained serious personal injuries including head injury, several bone fractures and internal injuries. He was in a coma for a month. In July of 2003, he settled his claim, received a cash payment of $125,205.43 and a structured settlement providing three payments as follows:
 
 $25,000 on July 22, 2008; 
 $35,000 on July 22, 2013; and 
 $62,734.90 on July 22, 2018. 
Just three months after Mr. Asproules received the initial cash payment of $125,205.43, the Petitioner, Settlement Funding of New York, L.L.C. and Mr. Asproules signed an agreement regarding the transfer of his first two payments under the structured settlement.
The mandatory disclosure statement provided to Mr. Asproules indicates that the two payments worth $60,000 in the future have a discounted present value of $43,309.72, using the applicable federal discount rate of 4.40% to evaluate annuities. The Petitioner also disclosed that its annual discount rate is 19.82%, compounded monthly, and offered Mr. Asproules advance funds in the gross amount of $16,200 in exchange for the transfer of his right to receive the $60,000 in future payments. The Petitioner would then deduct a legal fee of $2,000 and a processing fee of $200 resulting in net funds to be paid to Mr. Asproules in the amount of $14,000. It was also disclosed to Mr. Asproules that if the transfer was considered a loan, he would in effect be paying interest to the Petitioner at the rate of 22.49% per year.
Competent adults can enter into any legal contract; however, the law provides special protection for those who have suffered serious personal injuries. Thus, for more than twenty years, Congress has afforded tax-free status to structured settlement payments to injured persons or their families. Further, in 2002, New York became the 35th state to enact the SSPA in response to abuses of a practice known as "factoring," in which finance companies such as the Petitioner purchase an injury victim's future payments with sharply-discounted cash advances.
Factoring abuses are described in R & P Capital Resource, Inc. v. Metropolitan Life [*2]Insurance Company, 2003 WL 22673968 (Supreme Court, New York County, October 28, 2003). The full text of the Legislative Memorandum in Support of the SSPA, [2002 Sess. Law News of N.Y. Legis. Memo Ch. 537 (McKinney's)] is set forth in the case, In re Settlement Capital Corporation (Ballos), 2003 WL 22070486 (Supreme Court, Queens County, July 11, 2003), at footnote 1. The express legislative intent of the SSPA is "to curtail this practice by limiting transfers of structured settlements to true hardship cases."
As stated in the case, In re Settlement Funding of New York, L.L.C. (Cunningham), 195 Misc.2d 721, 723 (Supreme Court, Rensselaer County, May 20, 2003):

The heart of the SSPA's protection lies in the court's independent discretionary determination whether or not: "The transfer is in the best interest of the payee, taking into account the welfare and support of the payee's dependents; and whether the transaction, including the discount rate used to determine the gross advance amount and the fees and expenses used to determine the net amount are fair and reasonable."
(Citing GOL Law §5-1706(b), emphasis in original).
The parameters of the "best interest" test are demonstrated by the Settlement Funding of New York, L.L.C. (Cunningham) case, which involved the same Petitioner as in the instant case. The Court noted an unpublished case in which it approved a transfer with an unreasonably high interest rate solely on the payee's best interest because the payee desperately needed cash to obtain life-sustaining medical treatment for a loved one and had no other legitimate means of raising money. The Court stated:

Cunningham, however, is not in such desperate straits and it does not appear that this proposed transfer is in his "best interest." Given the high interest rate Settlement L.L.C. charges, Cunningham would have to more than double his initial investment in the recording equipment in order to simply break even. That does not appear likely.
Id. at 725.
Further, in the Settlement Capital Corporation (Ballos) case, supra, the Court found that the transfer was not in Ballos' best interest in that although he was totally disabled, his current income met his present needs and those of his teenage daughters, and Ballos did not consult with an independent financial or legal advisor before agreeing to the transfer of his structured settlement payment.
Lastly, In re Settlement Capital Corp. "Y", 194 Misc.2d 711 (Supreme Court, Rensselaer County, February 11, 2003), the Court found that the proposed transfer was not in the payee's best interest in that she wanted the money to reduce her family credit card bill in excess of $15,000 and she would receive a $40,000 payment under the structured settlement within three months.
In the instant case, the Petitioner submitted an affidavit from Mr. Asproules stating that he is 41 years old, has no dependents, is temporarily disabled and his mother supports him financially. She has agreed to do so until he receives Social Security disability payments. As a result, he has sources of income other than the two future payments to be transferred by him to the Petitioner. He has plans to complete his college education and obtain gainful employment. He wants to pay cash for a used car, pay old debts, furnish his mobile home and open a savings [*3]account.
 Applying the "best interest" test to Mr. Asproules' situation, it is clear to the Court that the proposed transfer is not in his best interests. Although he is temporarily disabled, he is not in the "life and death emergency" or "desperate straits" described in the Settlement Funding of New York, L.L.C. (Cunningham) case. He received a $125,205.43 cash payment three months before his agreement with the Petitioner and offers no explanation as to the use of those funds. He failed to appear in Court on December 8, 2003 because he "forgot" about the Court date.
Although Mr. Asproules' desire to purchase a car appears genuine, the proposed transfer of future payments at nearly usurious rates of 22.49% to purchase a $4,000 vehicle does not make economic sense. Interest rates are at a record low and Mr. Asproules can use his Social Security disability benefits to make monthly payments on a used car. If he is allowed to use the balance of the net advance funds to establish a savings account of approximately $5,000 for emergency purposes, he would give up the financial security of $60,000 to be paid to him over the next ten years. The structured settlement payments were based on the life-altering injuries sustained by Mr. Asproules and his need for tax-free income until he reaches retirement age. In the event of an emergency, he can negotiate a new agreement at any time, subject to Court approval.
The disclosure statements provided to Mr. Asproules reveal that the net funds to be paid to him represent 32.33% of the discounted present value of the first two payments under the structured settlement. In other words, the Petitioner offers to pay Mr. Asproules less than 33 cents on the dollar for the present value of his two structured settlement payments. Under present value analysis, a dollar today is worth more than a dollar tomorrow, but not at such a substantial discount.
Finally, the Court is not satisfied that Mr. Asproules fully understands the financial terms and consequences of the proposed transfer. In the Settlement Funding of New York, L.L.C. (Cunningham) case, supra, the Court noted the factoring company submitted an affidavit from the payee stating that the payee consulted with an independent attorney selected from the Bar referral list and that the payee was aware of the legal, tax and financial implications of the proposed transfer. The Court recognized that the factoring company met the technical requirement in the SSPA in that the company must advise the payee in writing to seek independent professional advice regarding the transfer; however, the Court noted, "an independent advisor consulted one time for the purpose of complying with this requirement does not have an established professional relationship with the payee and is not likely to stop a payee from proceeding with an imprudent transfer." Id. at 722. The Court stated, "these applications should be treated as coming without the independent advisor's endorsement unless the advisor submits an affidavit expressly stating that he or she endorses the transfer and gives specific reasons for doing so." Id. at 723.
The Petitioner submitted a letter from a certified financial advisor in West Nyack, New York indicating that the CFA advised Mr. Asproules "on the legal, tax and financial implications" of the transfer agreement and "reviewed all questions and concerns that Mr. Asproules had." However, the letter does not mention whether the CFA had any long-term professional relationship with Mr. Asproules, who paid for his services, and whether the CFA agrees with and recommends the proposed transfer as being in Mr. Asproules' best interests.
For all of these reasons, the Court finds that the proposed transfer of the payee's rights to receive future payments in the aggregate amount of $60,000 in exchange for net advance funds of [*4]$14,000 is not in Mr. Asproules' best interest under GOL §5-1706(b).
The second prong of the SSPA requires that the Court determine "whether the transaction, including the discount rate used to determine the gross advance amount and the fees and expenses used to determine the net amount are fair and reasonable." GOL §5-1706(b).
In the Settlement Capital Corporation (Ballos) case, supra, the Court stated, "Clearly, the New York State Legislature in enacting the SSPA and in empowering the courts with the discretion to determine whether the terms of a proposed transfer of future payments are fair and reasonable did not intend for the courts to be mere rubber stamps." Id. at 10.
In the instant case, the Petitioner determined the gross advance amount of $16,200 by applying an annual discount rate of 19.82%. This annual discount rate is significantly higher than the 15.46%, 15.591% and 18.621% rates rejected by other New York courts as unreasonable in Settlement Funding of New York (Cunningham), supra; Settlement Capital Corporation (Ballos), supra; and Settlement Capital Corporation ("Y"), supra.
The Petitioner proposes to deduct a legal fee of $2,000 and a processing fee of $200 before advancing net funds of $14,000 to Mr. Asproules. In the Settlement Funding of New York (Cunningham) case, supra, the Court considered identical fees involved with the same factoring company as in the instant case. Cunningham agreed to transfer aggregate funds worth more than $150,000 and receive net advance funds of $75,000. Apparently, Settlement Funding would charge the payees the same fees whether they receive $75,000 or $14,000.
The Court criticized the Petitioner's fees and expenses, stating:

Cunningham cannot reasonably be obliged to reimburse all of Settlement L.L.C.'s startup costs. In general, transferees should lower their interest rates if they desire the courts to approve their imposing their counsel fees and other processing fees on payees. Here, by contrast, Settlement Funding, L.L.C. proposes to charge Cunningham high interest and high "transfer expenses."
Id. at 724-725.
The Court found the terms of the proposed transfer were not fair and reasonable, stating:
Giving Settlement L.L.C. the benefit of the doubt and relying on the financial community's present lack of experience with these loans, the Court finds that initially an interest rate of no more than 8% would be "fair and reasonable" so long as the transferee does not charge its counsel fees and costs to the payee as transfer expenses.
Id. at 725.
In the instant case, the Petitioner's net advance funds of $14,000 represent just 23% of the $60,000 aggregate future payments that Mr. Asproules is transferring to the Petitioner. By contrast, percentages of 29%, 38% and 47.95% were rejected by New York courts as unreasonable in Settlement Capital Corporation (Ballos), supra; Settlement Capital Corporation ("Y"), supra; and Settlement Funding of New York (Cunningham).
According to the disclosure statement provided to Mr. Asproules, if the transfer were treated as a loan, he would pay interest to the Petitioner at a rate of 22.49% per year. Under the Penal Law, loan interest exceeding 25% is usury and punishable as a felony. The proposed payment of net funds of $14,000 in exchange for the transfer of future payments worth $60,000 is unconscionable and overreaching by any statistical measurement and by any equitable standard.
[*5]
For all of the above reasons, the Court finds that the Petitioner has failed to demonstrate to the Court's satisfaction and as required by statute that the "transaction, including the discount rate used to determine the gross advance amount and the fees and expenses used to determine the net amount are fair and reasonable." GOL §5-1706(b).
Accordingly, the petition is denied.
This constitutes the decision and Order of the Court.
Signed on December , 2003 at Canandaigua, New York
Frederick G. Reed
Acting Supreme Court Justice
Decision Date: December 30, 2003