OPINION OF THE COURT
Alice Schlesinger, J.
*893 This case involves a significant, yet often overlooked, statute which appears to have a disproportionate impact on persons of color and persons of limited income. The statute, found in title 17 of New York’s General Obligations Law, is known as the Structured Settlement Protection Act (SSPA). Simply stated, the SSPA requires judicial approval as a precondition to an injured plaintiff’s sale to a third party of future structured settlement payments. Title 17 sets forth both the procedure to be followed and the standard to be applied, effective July 2002, as well as penalties for noncompliance with the act.
The true significance of the SSPA is best understood by examining its purpose and its context.[1] The act, similar to others nationwide, was designed “to protect the recipients of long-term structured settlements from being victimized by companies aggressively seeking the acquisition of their rights.” (Ballos, 1 Misc 3d at 451.) The Assembly Memorandum in Support of the enactment of the Structured Settlement Protection Act sets forth the following as justification for the act:
“Structured settlements are a well-recognized means of compensating personal injury victims . . . They are negotiated between the injured person’s counsel and the other parties to a personal injury action . . . The structuring of a settlement enables the settlement recipient to receive secure tax-free income over a course of years or a lifetime to provide for future medical care, housing, education, etc. In this way, the proceeds from an award are not dissipated or lost by individuals unaccustomed to managing large sums.
“Recently a growing number of factoring companies have used aggressive advertising, plus the allure of quick and easy cash, to induce settlement recipients to cash out future payments, often at substantial discounts, depriving victims and their families of the long-term financial security their structured settlements were designed to provide. Although transfers of structured settlement payments are generally prohibited by contract (and often prohibited under applicable state law), factoring companies have built a rapidly expanding business around circumventing these prohibitions.
*894 “This market in the buying and selling of injured individuals’ payment streams can pose a hazard to existing recipients of structured settlements and to the public assistance programs on which recipients must often rely, once they have traded away secure income from structured settlements. The market also threatens the viability of structured settlements for injury victims who may need them in the future. This legislation seeks to curtail this practice by limiting transfers of structured settlement payments to true hardship cases. The Act does this by requiring full disclosure of the costs of any factoring transaction, advance notice to interested parties, and court approval of any transfer. Transfers of structured judgments or settlements for workers’ compensation claims would continue to be prohibited.” (2002 McKinney’s Session Laws of NY, at 2036.)
To carry out its intent and ensure the protection of the intended class (referred to as the payee), the Legislature in enacting the SSPA set forth “express findings” which the court must make before a transfer of payments can be approved. Specifically, General Obligations Law § 5-1706 (b) requires in relevant part that the court find that:
“the transfer is in the best interest of the payee, taking into account the welfare and support of the payee’s dependants; and whether the transaction, including the discount rate used to determine the gross advance amount and the fees and expenses used to determine the net advance amount, are fair and reasonable” (emphasis added).[2]
It unfortunately appears that not all courts apply the “best interest” standard in a manner consistent with the statute because of the procedural posture of the case when presented. The proceeding is commenced when the factoring company files a notice of petition and petition requesting judicial approval of its proposed purchase of an injured party’s structured settlement payments. The petition is made returnable in the Motion Submission Part of our court. The petitioning factoring company technically complies with General Obligations Law § 5-1705 by serving the petition on all “interested parties,” including the party currently receiving the structured payments (the payee who was the plaintiff in the personal injury action) and the *895 structured settlement obligor responsible for making the payments under the existing structured settlement. Although the proceeding is not truly adversarial in nature, the petition is typically marked submitted “on default” in the Motion Submission Part. The petition usually is supported by an affidavit from the payee confirming his or her “consent” to the proposed sale, as that party has been captured by “the allure of quick and easy cash.” (See, Assembly Mem in Support, supra at 2036.) The current structured settlement obligor, usually an insurance company, has no reason to oppose the proposed sale, as it matters not to the insurance company whether it pays the settlement monies to the original party or to a third party.
However, the Legislature in enacting the SSPA “did not intend for the courts to be mere rubber stamps” for the proposed sale. (Ballos, 1 Misc 3d at 461.) On the contrary, the above-quoted legislative history makes clear that to avoid the victimization so prevalent in the industry, the courts are intended to examine the various statutory criteria and determine whether the proposed sale will truly serve the “best interest” of the payee. Not surprisingly, in virtually all the cases throughout the state in which the standard has been applied and the court has chosen to publish its reasoning, the court has denied the petition on the ground that the proposed transfer did not serve the best interest of the payee. (See, e.g. Ballos, supra; Matter of Settlement Funding of N.Y. LLC v Solivan, 8 Misc 3d 1006[A], 2005 NY Slip Op 50946[U] [Sup Ct, Kings County 2005]; Matter of 321 Henderson Receivables L.P. v D’Amore, 9 Misc 3d 1110[A], 2005 NY Slip Op 51479[U] [Sup Ct, Kings County 2005]; Matter of Barr v Hartford Life Ins. Co., 4 Misc 3d 1021[A], 2004 NY Slip Op 50980[U] [Sup Ct, Nassau County 2004]; Matter of Rapid Settlements Ltd., 6 Misc 3d 1030[A], 2004 NY Slip Op 51844[U] [Sup Ct, Cortland County 2004]; Matter of Taliercio v Aetna Cas. & Sur. Co., NYLJ, Feb. 20, 2004, at 21, col 3 [Sup Ct, Richmond County]; Matter of 321 Henderson Receivables LP v Williams, NYLJ, Oct. 20, 2003, at 20, col 3 [Sup Ct, Queens County]; Matter of 321 Henderson Receivables Ltd. Partnership, 2 Misc 3d 463 [Sup Ct, Monroe County 2003]; Matter of Settlement Funding of N.Y., 1 Misc 3d 910[A], 2003 NY Slip Op 51638[U] [Sup Ct, Ontario County 2003].)
The primary reasons for the denials are twofold. First, the discount rate offered by the factoring company is so significant that the payee is oftentimes selling his payment rights for a fraction of their value, contrary to his “best interest.” Secondly, *896 the payee oftentimes lacks a viable, concrete plan for the use of the funds, or a more viable alternative exists which better serves his interests. This latter scenario proved to be true in a prior proceeding before this court, also with 321 Henderson Receivables as the petitioner.[3] In that case (Matter of Hall, Index No. 120232/03), the payee was an African American male in his early 20s who had received a structured settlement as an infant plaintiff in a lead poisoning case. The lead poisoning had left Mr. Hall with limited abilities. The well-intentioned Mr. Hall sought to sell his future structured payments for a fraction of their value to help his mother, who had fallen behind on her rent and been sued for nonpayment. Upon inquiring into whether the transfer was in Mr. Hall’s best interest, this court concluded that it was not. Mr. Hall’s mother had fallen behind in her rent because she had become unable to manage her affairs. Protective Services for Adults assisted Mrs. Hall in the nonpayment proceeding, a guardian was appointed, and the rent arrears were paid through public assistance. In sum, the problem which was the stated justification for the proposed sale of payments was resolved without jeopardizing any of Mr. Hall’s structured settlement rights.
Applying the statutory criteria to the case at bar, this court is compelled to deny the petition here as well, albeit for different reasons. The financial transaction cannot be considered “fair and reasonable.” What is more, petitioner 321 Henderson Receivables has failed to prove that the proposed sale of structured settlement payments is in the “best interest” of the payee Pedro Martinez, Jr. This conclusion is reached based on a thorough review of the initial papers plus additional papers requested by the court, as well as repeated conferences with the interested parties, including Mr. Martinez.
Mr. Martinez is 21 years old and single. In 1994, as an infant plaintiff, his mother entered into a structured settlement on his behalf with periodic payments through 2013. In his affidavit in support of the petition sworn to April 7, 2005, Mr. Martinez indicated that he was employed as a cashier earning $15,000 per year. He sought to sell to 321 Henderson one lump-sum payment of $50,000 due him in May 2008 and one lump-sum payment of $69,700 due him in May 2013. In exchange for the total *897 future payments of $119,700, Henderson promised to pay Martinez only $51,021.35. That amount, as confirmed by Henderson, represents a mere “55.70% of the estimated current value of the payments.” In its notice to Martinez, Henderson further advised Martinez that he would “in effect, be paying interest to [Henderson] at a rate of 16.39% per year.” In addition, Henderson advised that the proposed transaction had significant tax consequences, which Martinez should ascertain on his own.
In his affidavit, Martinez indicated that he planned to use the cash received as follows: $40,000 for a down payment on a store front in Harlem; $5,000 for two months of the store’s mortgage; and the balance of $6,021.35 for store merchandise. In a transparent attempt to satisfy the statutory requirement that the factoring company advise the payee to seek “independent professional advice” about the sale, the petition was also accompanied by a pro forma letter from an attorney to the petitioner professing that the attorney had discussed the details of the proposed transaction with Mr. Martinez and “believes Pedro understands and agrees.” The attorney further indicated that he would deposit the money from Henderson in his escrow account, withdraw his own fees and expenses, and disburse the balance to Mr. Martinez (a fact, like the tax consequences, not included in Mr. Martinez’ calculations set forth above).
The parties appeared before the court in June for a scheduled conference. Mr. Martinez was no longer employed and had no source of income. Further, Mr. Martinez explained to the court, and his bank statements confirmed, that he had no assets, and that the $120,000 in structured settlement payments which he had received since his 18th birthday in 2001 had all been dissipated.[4]
In response to the court’s questions, Mr. Martinez explained that he wanted the money to open a barber shop. However, he had no knowledge of the licensing requirements for a barber shop, had not investigated the cost of the necessary merchandise, and had not located a suitable space. The figures which Mr. Martinez had included in his affidavit had no basis in fact, and he himself had little more than an acquaintance who was a barber. That person, while identified by Mr. Martinez by name, declined to appear in court to discuss the potential of a business opportunity. Nor was Mr. Martinez able to develop a concrete *898 plan or even locate a viable storefront, despite repeated adjournments and some assistance from counsel.
This situation is precisely the type which the SSPA is intended to guard against. Enticed by the “allure of quick and easy cash,” Martinez was prepared to sell valuable future payments for a fraction of their worth and a potentially large tax bill. Even if the transaction were deemed “fair and reasonable,” which it is not, it does not serve the “best interest” of Mr. Martinez, who lacks any real plan for the money.
Accordingly, it is hereby ordered and adjudged that the petition is in all respects denied and the proceeding is dismissed.

. An excellent, in-depth analysis may be found in the decision rendered by Justice Patricia Satterfield in Matter of Settlement Capital Corp. (Ballos) (1 Misc 3d 446 [Sup Ct, Queens County 2003]).

. Additional required findings are set forth in subdivisions (a), (c), (d) and (e) of the same section, but those in (b) are the most specific and substantive.

. A review of cases filed in this courthouse since 2003 shows that the petitioner herein, 321 Henderson Receivables, has filed about 25 petitions during that short time, confirming that the “rapidly expanding business” criticized by the Legislature in 2002 still exists.

. Mr. Martinez indicated that his uncle had withdrawn money from his account without his consent, but the court was unable to confirm the claim.