Matter of DRB Capital LLC v Santana (2025 NY Slip Op 50041(U))

[*1]

Matter of DRB Capital LLC v Santana

2025 NY Slip Op 50041(U)

Decided on January 17, 2025

Supreme Court, Kings County

Maslow, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected in part through January 22, 2025; it will not be published in the printed Offical Reports.

Decided on January 17, 2025
Supreme Court, Kings County

In the Matter of DRB Capital, LLC, Petitioner,

against
Pablo Santana, PACIFIC LIFE AND ANNUITY SERVICES, INC., 
 and PACIFIC LIFE AND ANNUITY COMPANY, Respondents, for approval of 
 transfer of structured settlement payment rights in accordance with General 
 Obligations Law § 5-1701 et seq.[FN1]

Index No. 516107/2024

Jensen & Jensen, Brooklyn (Donald W. Jensen of counsel), for petitioner.
Pablo Santana, Brooklyn, respondent pro se.

Aaron D. Maslow, J.

The following numbered papers were used on this petition: NYSCEF Document Numbers 1-12.
Upon the foregoing papers, having heard oral argument, and due deliberation having been had, the within petition for approval of a proposed transfer of structured payment settlement rights is determined as follows.
Introduction
In the within special proceeding, petitioner DRB Capital, LLC ("DRB") has applied, pursuant to the Structured Settlement Protection Act (hereinafter "SSPA"), General Obligations Law § 5-1701 et seq., for the approval of the transfer of 125 monthly payments of $570.54 due Pablo Santana ("Mr. Santana"), commencing September 23, 2024 through and including January 23, 2035, under a structured settlement agreement dating back to a lawsuit commenced following a motor vehicle accident which occurred in 2009. The sum of these monthly $570.54 payments is $71,317.50. In the accident, Mr. Santana was riding a motorcycle when injured by a vehicle, according to his testimony, in which he also claimed resulting injuries to his jaw (surgery took place and a new surgery is necessary), left foot, left hand, and ribs. He also claims paralysis to his left side. This special proceeding was commenced by DRB, having been brought on by way of an order to show cause in which Mr. Santana, Pacific Life and Annuity Services, Inc., and Pacific Life and Annuity Company were named as "Interested Parties." DRB's petition states that in exchange for Mr. Santana assigning his rights to the aforesaid settlement proceeds DRB would pay him $38,925.00. This Court is charged with determining whether the transfer is in the "best interest" of Mr. Santana (General Obligations Law § 5-1706 [b]) and compliant with other requirements.

Legal Background
Prior to approval or denial of an application to transfer future proceeds from a structured settlement, it is the duty of the court to analyze the details surrounding the request.
"Enacted in 2002, the purpose of the SSPA, as reflected in the legislative materials, was to establish 'procedural safeguards for those who sell settlements that are awarded as a result of litigation,' due to a recognition that '[m]any of the people who receive such settlements are being compensated for very serious, debilitating injuries, and have been unfairly taken advantage of in the past by the businesses that purchase their settlements' " (Pinnacle Capital, LLC v O'Bleanis, 214 AD3d 913, 915 [2d Dept 2023] [quoting Mem in Support, Bill Jacket, L 2002, ch 537 at 5].)
The Court of Appeals has stated:
The factoring industry has been criticized for preying on structured settlement tort victims, encouraging them to enter into transactions that are not financially sound (see Assembly Mem. in Support, 2002 McKinney's Session Laws of NY at 2035, 2036 [discussing factoring companies' use of "aggressive advertising, plus the allure of quick and easy cash, to induce settlement recipients to cash out future payments, often at substantial discounts, depriving victims and their families of the long-term financial [*2]security their structured settlements were designed to provide"]; see also Laura J. Koenig, Note, Lies, Damned Lies, and Statistics? Structured Settlements, Factoring, and the Federal Government, 82 Ind LJ 809, 813 [2007]) (Cordero v Transamerica Annuity Serv. Corp., 39 NY3d 399, 404-405 [2023]; see Singer Asset Fin. Co., LLC v Melvin, 33 AD3d 355, 357 [1st Dept 2006]).
"Structured settlements serve strong public policy objectives in that they afford long-term financial protection for injury victims and their families. They protect against loss or premature dissipation of lump sum recoveries. They avoid the shift of responsibility for victims' care to public assistance programs. [¶] In the past several years there has been an explosion of efforts by unregulated entities, known as "factoring companies," to separate recipients of structured settlement payments from those payment streams. The subsequent factoring of structured settlement payments undermines the public policy objectives of structured settlements. They deprive injury victims and their families of the long-term financial security their settlements are designed to provide. The transfer can involve discounts corresponding to over 50% interest per year." (Letter from Life Ins. Council of NY, Inc., Bill Jacket, L 2002, ch 537.)
Yet, "The sale of structured settlements can serve the interest of a victim who has been awarded compensation for injuries or other damages, particularly if the victim has immediate needs that must be met. However, such persons may be particularly vulnerable to the overbearing sales tactics of structured settlement purchasers. The mandated judicial review of all such sales, coupled with the required disclosures of amounts that will be realized from the sale and the discount rate, should help ensure that the best interests of the payee, and his or her family, are served." (NY Atty Gen Mem in Support, Bill Jacket, L 2002, ch 537.)
"Any purported transfer entered into after July 1, 2002 without court approval is unenforceable, and payees may not waive their rights under the Act" (Matter of Law First Fin., LLC v Jamestown Life Ins. Co., 72 Misc 3d 1207[A], 2021 NY Slip Op 50672[U] [Sup Ct, Erie County 2021], citing General Obligations Law §§ 5-1706, 5-1708 [a]).
"[L]egislative history makes clear that to avoid the victimization so prevalent in the industry, the courts are intended to examine the various statutory criteria and determine whether the proposed sale will truly serve the 'best interest' of the payee" (Matter of 321 Henderson Receivables, L.P. v Martinez, 11 Misc 3d 892, 895 [Sup Ct, New York County 2006]; see General Obligations Law § 5-1706 [b]).
"Clearly, the New York State Legislature in enacting SSPA and in empowering the courts with the discretion to determine whether the terms of a proposed transfer of future payments are fair and reasonable did not intend for the courts to be mere rubber stamps" (Matter of Settlement Capital Corp. (Ballos), 1 Misc 3d 446, 461 [Sup Ct, Queens County 2003]). When the original 2002 legislation enacting SSPA was amended in 2004 to clarify that hardship was not a prerequisite for approving a sale of structured settlement proceeds, the Attorney General wrote that "we do note that there has been a very positive trend among members of the Judiciary to be sparing in approval of such sales, as was intended where the original legislation was drafted. Therefore, while hardship may not be required as a specific finding should this bill be approved, there is in our view, no reason for judges to refrain from weighing that factor, along with any other consideration they deem relevant in determining the 'best interest' criterion." (NY Atty Gen Mem in Support, Bill Jacket, L 2004, ch 480.)
Accordingly, in the present situation, the Court looks first to the statutory requirements of [*3]the SSPA, followed by an analysis of Mr. Santana's best interest.

 Compliance with Procedural Requirements
The SSPA contains various requirements. The Court finds that in its submitted papers, Petitioner DRB complied with the following requirements:
• At least ten days before the structured settlement transferor [FN2] signs a transfer agreement, the transferee must provide a disclosure statement to the transferor, setting forth nine informational matters (see General Obligations Law § 5-1703). NYSCEF Doc No. 5 contains the disclosure statement provided to Mr. Santana.
• The special proceeding seeking approval of the transfer shall be commenced by order to show cause in the Supreme Court of the county where the transferor resides or where the structured settlement was approved (see General Obligations Law § 5-1705 [a], [b]). Mr. Santana resides in Kings County, so commencement of this special proceeding via order to show cause in Supreme Court, Kings County, by DRB, is proper.
• A copy of the order to show cause and petition must be served upon all interested parties at least twenty days before the time at which the petition is noticed to be heard (see id. § 5-1705 [c]). This was effectuated (see NYSCEF Doc Nos. 10, 11).
• The transferor has been advised in writing by the transferee to seek independent professional advice regarding the transfer and has either received such advice or knowingly waived such advice in writing (see General Obligations Law § 5-1706 [c]). Mr. Santana acknowledged receipt of the advice and waived his right to seek independent professional advice (see NYSCEF Doc No. 6).
• A petition for approval of a transfer of structured settlement payment rights shall include a copy of the transfer agreement, a copy of the disclosure statement and proof of notice of that statement pursuant to General Obligations Law § 5-1703, and a listing of each of the payee's dependents, together with each dependent's age (see General Obligations Law § 5-1705 [d] [i], [ii], [iii]). These were all complied with (see NYSCEF Doc Nos. 1, ¶¶ 2, 8, 11; 4, 5).
The transferor is required to attend the court hearing on the petition, unless attendance is excused for good cause (see General Obligations Law § 5-1705 [e]). Mr. Santana attended the hearing.
General Obligations Law § 5-1705 (d) (iv) requires that a petition for approval of a transfer of structured settlement payment rights include a statement setting forth whether there have been any previous such transfers or applications for transfer and giving details of all such transfers or applications for transfer. DRB's petition included the following:
Pursuant to CPLR §2217(b), based upon information and belief, the Payee has sought similar relief under Kings County Supreme Court Index No. 01894/2018 (Approved), Index No. 0709/2019 (Approved), Index No. 1817/2019 (Approved), Index No. [*4]3648/2019 (Denied), Index No. 507429/2020 (Denied), and Index No. 151587/2024 (Dismissed) (NYSCEF Doc No. 1 ¶ 9).
Mr. Santana wrote in his declaration with respect to previous transfers:
Name of Court and case number
#1 Supreme Court of the State of New York, County of Kings. 1894/2018.
#2 Supreme Court of the State of New York, County of Kings. 709/2019.
#3 Supreme Court of the State of New York, County of Kings, 1817/2019.
#4 Supreme Court of the State of New York, County of Kings. 3648/2019
#5 Supreme Court of the State of New York, County of Kings 507429/2020
#6 Supreme Court of the State of New York, County of Kings 151587/2024 (NYSCEF Doc No. 7 ¶ 8).
Both DRB and Mr. Santana were not completely accurate. First, Index No. 151587/2024 was assigned to a special proceeding commenced in New York County, which neither indicated. The petition was withdrawn — not dismissed. Additionally, neither listed Kings County Supreme Court Index No. 3037/2018, wherein on January 30, 2019, Hon. Justice Wavny Toussaint denied the petition for no appearance by Mr. Santana after a third calendar call. In fact, Justice Toussaint later on denied petitions seeking approval of a transfer of Mr. Santana's structured settlement payments. In Kings County Supreme Court Index No. 3648/2019, on December 23, 2019, Justice Toussaint wrote in her order: "The within application is denied. The proposed transfer application is not in the best interest of Pablo Santana and papers submitted by Pablo Santana contain inaccurate statements." (Order, Sup Ct, Kings County, Index No. 3648/2019.) In Index Number 507429/2020, on September 30, 2020, Justice Toussaint wrote in her order: "The petition to transfer the structured payments due to Pablo Santana, is denied, as the Court has not been provided with sufficient information to determine whether the transfer is in Mr. Santana's best interest" (NYSCEF Doc No. 15, Sup Ct, Kings County, Index No. 507429/2020).
Although the above-described deficiencies might be deemed minimal, nonetheless, the petition did not contain all that is required to apprise the Court of "whether there have been any previous transfers or applications for transfer of the structured settlement payment rights and giving details of all such transfers or applications for transfer" (General Obligations Law § 5-1705 [d] [iv] [emphasis added]). In a prior case, this Court held as follows:
A petitioner under SSPA must provide complete disclosure regarding all previous attempted transfers, be they court-approved or not, and this Court concludes as a matter of law that at a minimum the following details concerning them must be provided:
• Date of agreement
• Purchaser
• Amount of structured settlement proceeds transferred or attempted to be transferred
• Purchase price of transferred or attempted-to-be-transferred structured settlement proceeds
• Discount rate and other financial details, as set forth in General Obligations Law § 5-1703
• Reason for payee's sale of structured settlement proceeds
• Caption, court, county, and index number of special proceeding
• Justice's name
• Outcome of special proceeding and the court's reasoning
• If transfer was approved by the court, how the funds received by the payee were used
Providing this information would comport with the legislative purpose in enacting the SSPA initially in 2002, as well as in amending it in 2010 to require that details of previous transfers and applications be set forth. The sponsor of the 2010 amendatory provisions wrote: "These changes . . . will insure that the court . . . is properly informed about the history of the structured settlement and can make inquiries of the payee to ensure compliance with the statute (Letter from Hon. Helene E. Weinstein, June 25, 2010, Bill Jacket, L 2010, ch 511). Another proponent wrote: "The additional information . . . will provide the court with the tools necessary to properly protect the plaintiff and society, who may bear the costs of an insolvent injured plaintiff, as it renders its decisions (Mem NY Consumer Protection Board in Support, Bill Jacket, L 2010, ch 511). (Matter of Sapphire Valley Group, LLC v Prudential Assigned Settlement Servs. Corp., 78 Misc 3d 1224[A], 2023 NY Slip Op 50354[U], *6-7 [Sup Ct, Kings County 2023]).
Significantly, the petition herein did not set forth with respect to the previous transfers or applications for transfer the dates of the agreements, the amounts transferred or attempted to be transferred, the purchase prices, the discounted rates and other financial details, the stated reasons for seeking the transfers, accurate information regarding two applications (discussed supra at 4), the court justices' names, the courts' reasoning, and how proceeds from transfers were used. This weighs heavily on this Court.

 Background of Factors to Consider
Mr. Santana is willing and anxious to transfer the payments in question. However, according to one court, "the structured settlement payee's willingness to transfer the settlement proceeds has no bearing on this Court's determination of whether the transfer is fair and reasonable" (Matter of J.G. Wentworth Originations, LLC (Allstate Life Ins. Co. of NY — Kwant), 61 Misc 3d 1224[A], 2018 NY Slip Op 51730[U], *1 [Sup Ct, Dutchess County 2018]; see Matter of Settlement Funding of NY, 195 Misc 2d 721, 724 [Sup Ct, Rensselaer County 2003]). While a transferee's desires can be taken into account, a court reviewing a proposed transfer of structured settlement proceeds must assess it objectively. Accordingly, this Court must focus on the circumstances and details surrounding the transfer.
When determining the best interest of the payee, courts have held that there exist both numerical and personal elements that should be considered. "Two distinct substantive inquiries are required of the court before transfer of a structured settlement can be approved[,] one assessing whether the proposed transfer is in the best interest of the payee and the other assessing whether the transaction is fair and reasonable" (Matter of Barr v Hartford Life Ins. Co. (4 Misc 3d 1021[A], 2004 NY Slip Op 50980[U], *1 [Sup Ct, Nassau County 2004] [emphasis added]). Furthermore, "[w]hile considering the best interest of the payee, the court must also determine whether the transaction, including the discount rate used to determine the gross advance amount and the fees and expenses used to determine the net advance amount are fair and reasonable" (Matter of J.G. Wentworth Originations, LLC (Allstate Life Ins. Co. of NY — Kwant), 2018 NY Slip Op 51730[U], *1).

Fairness and Reasonableness of the Transaction
Looking first to the numerical elements of an agreement of the type under review, it has been noted that "there has been little agreement as to what constitutes a proper discount rate or what amount of fees and costs are allowable. Courts have also reached different conclusions with regard to the fairness and reasonableness of the fees and costs associated with the transaction [citations omitted]" (Matter of Am. Farms, LLC v John Hancock Assignment Co., 61 Misc 3d 1203[A], 2018 NY Slip Op 51349[U], *3-4 [Sup Ct, Kings County 2018]). "Although what constitutes a fair and reasonable transaction is also left undefined in the statute, two factors are specifically identified for consideration: the fees and expenses and the discount rate" (Matter of Barr v Hartford Life Ins. Co., 2004 NY Slip Op 50980[U], *1). The reasonableness of the fees and expenses is not in question here as DRB has averred that it does not intend to seek any fees or expenses resulting from the instant transaction (see NYSCEF Doc No. 5 ¶ 6).[FN3]

Based on DRB's own New York Disclosure Statement, Mr. Santana would be selling $71,317.50 of future direct payments for $38,925.00, when the discounted amount applying the IRS's 5.40% applicable federal rate would be much more, $54,066.23 (see id. ¶ 3). DRB disclosed that comparable annuities of the $71,317.50 to be paid could be obtained for $52,650.83 or $52,924.36 (see id.), i.e., if one were to purchase a similar annuity yielding $71,317.50, the purchase price would be either $52,650.83 or $52,924.36, according to two comparables. This demonstrates that it would be eminently unfair and unreasonable to pay someone $38,925.00 in exchange for 125 monthly payments of $570.54 payable over the period of September 23, 2024 to January 23, 2035, totaling $71,317.50.

 Best Interest of the Transferee
General Obligations Law § 5-1706 (b) provides:
No direct or indirect transfer of structured settlement payment rights shall be effective and no structured settlement obligor or annuity issuer shall be required to make any payment directly or indirectly to any transferee of structured settlement payment rights unless the transfer has been authorized in advance in a final order of a court of competent jurisdiction based upon express findings by such court that:
. . .
(b) the transfer is in the best interest of the payee, taking into account the welfare and support of the payee's dependents; and whether the transaction, including the discount rate used to determine the gross advance amount and the fees and expenses used to determine the net advance amount, are fair and reasonable [emphasis added].
The court in Matter of Settlement Capital Corp. (Ballos), 1 Misc 3d at 455, articulated the meaning of the phrase "best interest of the payee" in this context as follows:
After an independent analysis of decisional law in this and other jurisdictions, and consideration of the legislative history of SSPA, this court determines that the best interest prong should be assessed on a case-by-case basis, giving specific consideration to such factors as the payee's age; mental and physical capacity; maturity level; ability to [*5]show sufficient income that is independent of the payments sought for transfer; capacity to provide for the welfare and support of the payee's dependents; the need for medical treatment; the stated purpose for the transfer; and the demonstrated ability of the payee to appreciate the financial terms and consequences of the proposed transfer based upon truly independent legal and financial advice.
Additionally, courts must take into consideration "whether the proposed transfer of structured settlement payments, which were designed to preserve the injured person's long-term financial security, will provide needed financial rescue without jeopardizing or irreparably impairing the financial security afforded to the payee and his or her dependents by the periodic payments" (id.).
Mr. Santana does not have any dependents. Additionally, it is apparent to this Court that he possesses sufficient mental capacity. Mr. Santana, now a 56-year-old adult who had five children, was a professional bodyguard, sports promoter, and traveling mechanic before the accident. He described the life-altering accident: In 2009 he was run over on his motorcycle by another vehicle. He testified clearly about his circumstances, including his disabilities and way of living. He used sold settlement proceeds to purchase a food truck but the food selling business he started did not pan out. He is paying off a Jeep. Mr. Santana is very family oriented and has helped his daughter with medical school tuition and his son in buying a car although he was not financially required to do so.
Mr. Santana testified that besides receiving his structured settlement proceeds, he also receives $1,250.00 in disability payments per month, which will or have increased to $1,800.00 and then $2,400. He received $130.00 a month in food stamps which has or will increase to $280.00. He purchased a condominium in Florida which he expects to yield a substantial profit when sold.
Mr. Santana testified that he intends to use the $38,925.00 to be paid by DRB as follows: to purchase a new scooter for $2,400.00; to pay back rent owed; to maintain a $250-per-month room for storage of certain possessions at his prior residence; to pay rent in advance "to be in peace"; to finish paying back the loan he took out on the food truck; to acquire new furniture; and to re-do jaw surgery, which will require a year-long stay in a nursing home.

Conclusion
"The interest of public policy is preserved by [structured settlements to resolve tort claims] because it ensures a compensation stream to pay for future care or needs. It serves to prevent settlement funds from being dissipated, and such injuries becoming the responsibility of the public health care system" (Mem NY Consumer Protection Board in Support, Bill Jacket, L 2010, ch 511). "Consumers of one-time structured settlement payment services must be accountable to the court and provide a justifiable reason for amending the court[ ] order and seeking to liquidate their structured settlement into a lump sum payment" (id.).
As acknowledged above, the legislative purposes underpinning the SSPA were both societal and personal in nature. Both the public at large needed to be protected as did compensated tort victims. To approve the transfer at bar in this special proceeding, this Court would undermine the legislative priorities of avoiding tort victims from becoming public charges, preventing resourceful factoring companies from preying on them, enabling individuals who have serious needs for immediate cash to obtain it, requiring complete disclosure of transfer [*6]situations, and facilitating courts' informed consideration of transfers. (See supra at 2-3.)
The SSPA was created to allow courts to act as a shield preventing vulnerable individuals from being exploited by those more privileged in their knowledge of the intricacies of the financial system. The discretionary nature of the SSPA grants the courts the right to analyze applications substantively while simultaneously scrutinizing parties' adherence to procedural rules. This Court performs its review of the proposed transfer herein, bearing in mind the legislative goals in enacting the SSPA.
This Court is constrained to reject the proposed transfer. While it is admirable that Mr. Santana assisted his children financially, the purpose of the structured settlement proceeds was designed to compensate him for past and future pain and suffering, taking into account future medical needs. Payments by him to family members reduced the availability of the settlement proceeds for his own use, such that he now seeks to sell them at an unfair and unreasonable discount. These family payments have impaired his ability to support himself over the course of the next ten years, at the end of which settlement proceeds would resume. Moreover, Mr. Santana will come into possession of a nice-sized profit from the sale of his Florida condominium. This should provide him with added income to pursue his goals of maintaining payment of the storage room, paying his rent, paying off vehicle loans, and undergoing corrective jaw surgery, taking into account the social service benefits he is receiving, which will increase.
Frankly, this Court is of the view that Mr. Santana's interests would be better served by the continued stream of income of $570.54 per month, especially considering that he already sold his monthly proceeds three times: 196 payments of $875.00 due October 23, 2018 to January 23, 2035; 191 payments of $804.00 from March 23, 2019 to January 23, 2035; and 181 payments of $430.00 from January 23, 2020 to January 23, 2035 (see NYSCEF Doc No. 7 at 2). With the continued stream of payments, Mr. Santana would be better protected financially so that he could make necessary payments for his own benefit on an ongoing basis and, if there remains a surplus, discretionary payments for the benefit of his children.
Altogether, with DRB having failed to sufficiently provide details of prior transfers and applied-for transfers, the undervalued sale price Mr. Santana will receive from the within proposed sale, and Mr. Santana's present condition, the Court herein agrees with the previous determinations of Hon. Justice Toussaint that the proposed sale of Mr. Santana's structured settlement proceeds is not in his best interest.
For the foregoing reasons, it is hereby ORDERED, ADJUDGED, and DECREED as follows:
(1) The findings necessary for a court to approve a transfer of structured settlement payment rights pursuant to General Obligations Law § 5-1706 have not been proved.
(2) The application by Petitioner DRB Capital, LLC to approve a transfer of $71,317.50 of Respondent Pablo Santana's future structured settlement proceeds payments from September 23, 2024 to January 23, 2035 for $38,925.00 is denied.
(3) The within special proceeding is dismissed.
(4) Within ten days of the entry of this decision, order, and judgment, Petitioner DRB Capital, LLC shall serve a copy of it upon all Respondents herein (a) by first-class mail (with a certificate of mailing being obtained) to all known residence and business addresses, (b) by certified mail, return receipt requested, to all known residence and [*7]business addresses, and (c) by email to all known email addresses for them; proof of said service shall be filed on NYSCEF within ten days after service is effectuated.
(5) A copy of this decision, order, and judgment shall be annexed to any future petitions commencing proceedings in this or any other county under the Structured Settlement Protection Act seeking approval of transfers of any and all remaining payments due Respondent Pablo Santana pursuant to the structure settlement which concluded the litigation concerning his 2009 motor vehicle accident.

Footnotes

Footnote 1:. The petition set forth the caption of this special proceeding as follows:
_______________________________________________________ 

In the matter of DRB Capital, LLC,
 Petitioner

and

Pablo Santana, Pacific Life and Annuity Services, Inc., and Pacific Life and Annuity Company,
                                                          As Interested Parties _______________________________________________________ (NYSCEF Doc No. 1.)
The order to show cause's caption contained no description for the parties above and below the 
"and" (see NYSCEF Doc No. 9). "An action for approval of a transfer of a structured settlement shall be by a special proceeding brought on only by order to show cause" (General Obligations Law § 5-1705 [a]). Usually special proceedings contain a summary of the relief requested in the caption but none was included by petitioner. Taking into account other punctuation and stylistic deficiencies, the Court amends the caption as listed above.

Footnote 2:. "Payee" is the term used in the SSPA, because the transferor has been or will be paid the structured settlement payments. This Court finds it confusing, however, because "payee" may be construed as the transferee of the structure settlement payment proceeds, which, obviously, would be in error. Thus the person who desires to transfer his structured settlement payments to the factoring company is denoted the "transferor."

Footnote 3:. Presumably, fees and expenses, including the $950.00 insurance company administration fee, are baked into the reduced present value offered as the amount to be paid to Mr. Santana.