*722 OPINION OF THE COURT
James B. Canfield, J.
Petitioners Settlement Funding of New York L.L.C. (Settlement L.L.C.) and Neil Cunningham (Cunningham) move pursuant to General Obligations Law § 5-1706 for judicial approval to transfer a portion of Cunningham’s structured settlement to Settlement L.L.C.
The Structured Settlement Protection Act (SSPA), General Obligations Law § 5-1701 et seq., was enacted as a result of concern that structured settlement “payees,” such as Cunningham, are especially prone to being victimized and quickly dissipating their awards. The SSPA protects payees from being taken advantage of by businesses seeking to acquire the payees’ structured settlement payment rights. The SSPA discourages such transfers by requiring would-be transferees to commence special proceedings for the purpose of seeking judicial approval of the transfer (General Obligations Law §§ 5-1705, 5-1706). Transferees bear the attendant filing fees and costs and may not recoup them if the application is denied (General Obligations Law § 5-1704 [c]). Any purported transfer entered into after July 1, 2002 without court approval is unenforceable (General Obligations Law § 5-1706) and payees may not waive their rights under the SSPA (General Obligations Law § 5-1708 [a]). Transferees are barred from incorporating certain provisions in the transfer agreements (General Obligations Law § 5-1704) and required to fully apprize the payee of the terms of the transfer (General Obligations Law § 5-1703).
The SSPA also requires that the transferee must advise the payee “in writing” “to seek independent professional advice regarding the transfer” and the payee must either seek such advice or sign a written waiver of the opportunity to seek independent advice (General Obligations Law § 5-1706 [c]). This provision, however, does not necessarily shield payees from their own improvidence. The SSPA does not require that payees actually consult, much less listen, to an independent advisor. In practice, an independent advisor consulted one time for the purpose of complying with this requirement does not have an established professional relationship with the payee and is not likely to stop a payee from proceeding with an imprudent transfer.
In this case, the petitioners met all of the SSPA’s literal requirements for independent advice. Cunningham consulted an independent attorney selected off of the bar referral list and *723 petitioners subsequently submitted Cunningham’s form affidavit prepared by Settlement L.L.C. attesting to the fact that he had done so and was now “aware of the legal, tax and financial implications of the proposed transfer.” What the boilerplate affidavit fails to reveal and the court was initially unaware of is that the independent professional advisor did not continue to represent Cunningham in this application and does not support Cunningham’s decision to sell his interest for less than half its present value. While the SSPA does not require that those facts be disclosed as part of Settlement L.L.C.’s application, the failure of General Obligations Law § 5-1706 (c) to require that the fact that the advisor’s position regarding the transfer be reported to the court as part of the application is a noteworthy gap. In light of that gap, these applications should be treated as coming without the independent advisor’s endorsement unless the advisor submits an affidavit expressly stating that he or she endorses the transfer and gives specific reasons for doing so.
In practice, the SSPA’s objective requirements and the courts’ screening petitions for compliance (General Obligations Law § 5-1706 [a], [c], [d], [e]) offer only very limited protection for victim-prone payees. The heart of the SSPA’s protection lies in the courts’ independent discretionary determination whether or not:
“[T]he transfer is in the best interest of the payee, taking into account the welfare and support of the payee’s dependants; and whether the transaction, including the discount rate used to determine the gross advance amount and the fees and expenses used to determine the net advance amount, are fair and reasonable” (General Obligations Law § 5-1706 [b] [emphasis added]).
In this case, Settlement L.L.C. proposes to purchase a portion of Cunningham’s structured settlement that is presently worth $151,701.75 for only $75,000, or 47.95% of its present discounted value. The effective interest rate of the advance, if it is treated as a loan, is 15.46%. That interest rate is more than two and a half times the current low mortgage interest rate of 4.8% on a 20-year mortgage and approximates the interest rates on unsecured loans and credit card debt. Furthermore, Cunningham is being required to pay Settlement L.L.C.’s counsel $2,000 in fees and a $200 processing fee out of the amount advanced to Cunningham by Settlement L.L.C. Banks’ attorneys, by comparison, receive less than $550 when a mortgage is refinanced.
*724 Settlement L.L.C. attempts to justify the 15.46% interest rate by declaring that it is entitled to determine the rate at which it will lend money, its interest rate on this transaction falls within the range of what is presently being charged in the “market” for structured settlement transfers, and Cunningham deems the interest rate acceptable. Assuming for the purposes of the argument that all three points are true, none of them is relevant to the question of whether 15.46% is “fair and reasonable.” The SSPA clearly reflects the Legislature’s dissatisfaction with the structured settlement transfer market rates, and its conclusion that payees cannot protect their best interest and thus require judicial supervision. Settlement L.L.C.’s assurance that 15.46% is lower than the interest rates prior to the SSPA’s enactment does not logically compel a finding that the market rates have already dropped to the level of “fair and reasonable.” Finally, the payee’s willingness has no bearing on the courts’ determination of whether the rate is “fair and reasonable.”
Settlement L.L.C. has not demonstrated that these loans are, in practice, riskier than other types of secured loans. Settlement L.L.C. gives no concrete basis for expecting to be embroiled in future litigation with Cunningham, his creditors, and/or the bankruptcy court. Settlement L.L.C. makes no specific complaint about the solvency of the structured settlement obligor, Safeco Assigned Benefits Service Company and Safeco Life Insurance Company. While insurance companies have defaulted, Settlement L.L.C.’s general observations regarding potential risks are simply too speculative to justify its demand for 15.46% interest. Indeed, if structured settlements actually are as risky as Settlement L.L.C. suggests, then the courts should immediately stop approving them in the first place. The petitioners have failed to show that 15.46% is a “fair and reasonable” interest rate.
Settlement L.L.C. attempts to justify the $2,000 counsel fee it would charge Cunningham by indicating that approximately 11.5 hours were required to prepare this application and the various papers and conference with Cunningham. While it may be that in this particular instance Settlement L.L.C.’s counsel has spent that much time, the court concludes that once Settlement L.L.C. is familiar with all of the requirements of General Obligations Law § 5-1701 et seq. it will not be necessary to expend more than a couple of hours at most. Cunningham cannot reasonably be obliged to reimburse all of Settlement L.L.C.’s startup costs. In general, transferees should lower *725 their interest rates if they desire the courts to approve their imposing their counsel fees and other processing fees on payees. Here by contrast, Settlement L.L.C. proposes to charge Cunningham high interest and high “transfer expenses.”
The court finds that the terms by which Settlement L.L.C. proposes to acquire Cunningham’s structured settlement benefits are not “fair and reasonable” and the petition must be rejected on that ground (General Obligations Law § 5-1706 [b]). Giving Settlement L.L.C. the benefit of the doubt and relying on the financial community’s present lack of experience with these loans, the court finds that initially an interest rate of no more than 8% would be “fair and reasonable” so long as the transferee does not charge its counsel fees and costs to the payee as transfer expenses (General Obligations Law § 5-1701 [s]).
The other issue that the courts are called upon to determine in these applications is what is the payee’s “best interest.” “Best interest” is a separate and independent consideration from whether the transaction is “fair and reasonable.” As both are required for judicial approval, it will generally be unnecessary to consider the payee’s “best interest” after concluding that a transaction is not “fair and reasonable” (General Obligations Law § 5-1706 [b]). Nevertheless, the court recently approved a transfer with an unreasonably high interest rate based solely on the payee’s “best interest.” In that case, the payee desperately needed cash to obtain life sustaining medical treatment for a loved one and had no other legitimate means of raising the money. The court concluded that in the face of a “life and death emergency” the payee’s best interest could outweigh the fact that the transfer terms were not fair or reasonable. Cunningham, however, is not in such desperate straits and it does not appear that this proposed transfer is in his “best interest.” Given the high interest rate Settlement L.L.C. charges, Cunningham would have to more than double his initial investment in the recording equipment in order to simply break even. That does not appear likely.
The proposed transfer does not meet either the requirement that the transfer be in Cunningham’s “best interest” or that the rate be “fair and reasonable.” Accordingly, the application for judicial approval of the transfer of an interest in a structured settlement is denied.