OPINION OF THE COURT
Norma Ruiz, J.
Application by Minerva Roman, as mother and natural guardian of the infant plaintiff Jenny Lee Roman, for an order pursuant to CPLR 1207 seeking approval of the submitted infant compromise order of the infant plaintiffs claim is denied.
The within action was commenced to recover damages for personal injuries sustained by the infant plaintiff, who, as a nine-year-old pedestrian, was struck by a vehicle which was owned and operated by the defendants in the vicinity of Broadway and West 160th Street in Upper Manhattan. The infant plaintiffs injuries required hospital admission for, among other things: displaced fractures of her left tibia and fibula requiring open reduction, with external fixation and later fixator removal; loss of consciousness; chipped teeth; and most importantly, two left parietal skull fractures with closed head trauma and intracranial hemorrhage, resulting in undisputed traumatic brain injury along with postconcussion syndrome.
At the outset, it should be noted that the initial papers filed in this application were in conformity with the requirements of the CPLR and included: the proposed infant compromise order; the mother’s petition in affidavit form; the attorney’s affirmation; various hospital records; treating doctors’ reports; and doctors’ affirmations of recent physical examinations. Missing from the initial papers was a recent examination by plaintiff’s neurologist; however, this was supplied to the court before its first scheduled hearing with all of the parties.
The total settlement amount of $800,000 ($10,000 of which was in satisfaction of the mother’s individual claims for emotional distress) was agreed upon on December 13, 2005, following mediation, as evidenced by the postmediation agreement (annexed as exhibit I). This settlement amount was character *323 ized. by counsel in his affirmation as being in the best interests of the infant given issues concerning liability, and, as such, the court is in agreement that this amount appears to be fair and reasonable.
However, of significant concern to the court is the report of Jenny Lee’s neurologist — Dr. Aric Hausknecht — following his August 22, 2006 examination of the infant, wherein he found that she had “sustained significant limitation of function of her neurocognitive and neuropsychological facilities” which would “have lifelong sequelae from this injury.” These neurological deficits were further described by Jenny Lee herself when, in response to the court’s interview concerning her condition, she responded that she continued to experience episodes where she “zoned-out” for periods of time, a sensation that left her feeling that her “body was there, but her mind was not.” These episodes were reported to be sporadic but persistent. She also indicated that she had difficulty remembering school material, notwithstanding this she managed to maintain good grades and had demonstrated an interest in going to college.
Bearing in mind that “courts are bound to protect infants, who are their wards” (see Valdimer v Mount Vernon Hebrew Camps, 9 NY2d 21, 24 [1961]), one of the primary concerns in deciding how Jenny Lee’s award should be distributed is the potential for her life-long medical needs.
Therefore, in reviewing the proposed infant compromise order in advance of the scheduled hearing, the court informed the plaintiff’s attorney that it was not inclined to authorize an outright pay-out of $519,967 to be deposited in a bank for distribution to the infant at the age of 18 years. Indeed, at the hearing of September 11, 2006, the court, the attorneys for the plaintiff and defendant, along with their respective structured settlement company representatives, spent a considerable period of time devising an optimum structure which would take into consideration all of Jenny Lee’s future needs. Allowances were made for college, medical insurance, lump-sum payments, etc. The proposed structured settlement and annuity is represented as follows:
*324 Benefit Description Guaranteed Expected
Benefit Benefit Cost
Period Certain Annuity- $25,000 $150,000 $150,000 $99,525
payable annually, guaranteed for 6 year(s), beginning on 8/01/2012, with the last guaranteed payment on 8/1/2017.
Period Certain Annuity- $750 pay-$67,171 $67,171 $42,179
able monthly, guaranteed for 6 year(s) and 10 monthsfs), beginning on 8/01/2012, increasing at a rate of 3.00% compounded annually, with the last guaranteed payment on 5/01/2019.
Life with Certain Annuity-$1,497,802 $3,987,470 $344,966
$1,972.58 for life, payable monthly, guaranteed for 36 years(s), beginning on 6/01/2019, increasing at a rate of 3.00% compounded annually, with the last guaranteed payment on 5/1/2055.
Guaranteed Lump Sum - $50,000 $50,000 $50,000 $33,047
paid as a lump sum on 4/15/2015 guaranteed.
Subtotal for Jenny Lee Roman $1,764,973 $4,254,641 $519,716
Surprisingly, the parents were not in agreement with a structure which would maximize their daughter’s award. They were both adamant that all of the funds be available to plaintiff on her 18th birthday, notwithstanding the financial advice from both of the structure representatives who agreed that a lump-sum distribution would be underminded by tax considerations, markedly decreasing the funds available, rather than increasing it exponentially.
Echoing the advice of these representatives, the court adjourned the hearing for the purpose of allowing the parents to explore financial products which would not deplete the infant’s assets. On the date of the continued hearing, the attorneys and their respective structure company representatives were again present in a timely manner; however, the court was made to wait for both the parents. The first to arrive was the *325 presumptive father Juan Ramos. All of the submitted papers reflect Jenny Lee’s surname to be Roman — which is her mother’s surname. There is no documentary proof anywhere that Juan Ramos is her natural or adoptive father, and hence has any standing to have his wishes concerning Jenny Lee’s assets considered by the court. Nevertheless, giving him the benefit of the doubt, the court requested — but did not receive from him — alternate financial plans regarding the management of her funds. Other than the proposed structure arrived at on the prior hearing date, Mr. Ramos failed to submit any counter proposals. When Ms. Roman ultimately arrived in court, she likewise failed to provide the court with any other financial suggestions. Once again, she insisted that her preference was to deposit the money in the bank for full distribution when Jenny Lee turned 18 years of age.
This intransigent stance leads the court to conclude that the mother’s interests are at odds with those of the infant which the court is duty-bound to protect. This court is mindful that “where reasonable minds may legitimately differ, the judgment of the infant’s natural guardian should prevail” (Stahl v Rhee, 220 AD2d 39, 46 [2d Dept 1996]). However, the mother was a signatory to the postmediation agreement, which specifically provided that the award would be placed into a structure plan acceptable to both the guardian and the court.
Unlike the infant plaintiff’s mother in Stahl (supra) who rejected the settlement amount because it was grossly disproportionate with the infant’s lifetime needs (who required 24 hour nursing care and assistance with his activities of daily living), here, Ms. Roman rejects the structure merely because it fails to place the entire award in the infant’s hands at the age of 18. Such judgment is unreasonable, arbitrary and capricious and will likely result in prejudice to Jenny Lee’s future financial stability (see De Forte v Liggett & Myers Tobacco Co., 42 Misc 2d 721 [Sup Ct, Kings County 1964]). This conclusion is borne out by empirical analysis conducted by structure companies which reveals that about 30% of people who receive lump-sum awards have nothing left after only two months, 50% have no money within one year, and over 90% of people have spent all of their money within five years. (Ringler Associates, Structured Settlement Consultants [Jan. 9, 2007].)
Bearing this analysis in mind, the court likewise rejects a supplemental settlement structure which awards Jenny Lee *326 lump sum payments of: $220,000 at 18 years old, $260,000 at 21 years old, and the balance of $327,826.27 at 25 years old, resulting in a value of the guaranteed benefits in the amount of $807,286, versus $1,764,973 in guaranteed benefits in the plan arrived at on September 11, 2006. That is a potential loss of more than 50% of her assets.
Again, the court is aware that “the power of the court to approve a settlement does not confer a concomitant power to dictate the terms of the settlement” (Stahl, supra at 44-45), and great deference is given to the guardian’s judgment concerning the choice of a particular structured settlement (see Barretta v NBKL Corp., 298 AD2d 539 [2d Dept 2002]). Nevertheless, there is no showing that Ms. Minerva Roman has explored any other financial avenue to prevent the depletion of her daughter’s assets nor that she has sought financial advice from objective financial experts. Her initial assent to a structured settlement, followed by a complete reversal of position, without rational basis or even articulable reasons, bespeaks an arbitrary and capricious mind.
This application represents the flip side of a petition, made pursuant to the Structured Settlement Protection Act (SSPA), for the transfer of structured settlements. In those petitions pursuant to General Obligations Law § 5-1706, the court must similarly determine whether the transfer is in the “best interests” of the payee and whether the transaction, including the discount rate used, is “fair and reasonable.” (See Matter of Settlement Funding of N.Y., 1 Misc 3d 910[A], 2003 NY Slip Op 51638[U] [Sup Ct, Ontario County 2003]; Matter of Settlement Funding of N.Y., 195 Misc 2d 721 [Sup Ct, Rensselaer County 2003]; Matter of 321 Henderson Receivables Ltd. Partnership, 2 Misc 3d 463 [Sup Ct, Monroe County 2003]; Matter of Barr v Hartford Life Ins. Co., 4 Misc 3d 1021[A], 2004 NY Slip Op 50980[U] [Sup Ct, Nassau County 2004].)
Since the governing statute offered scant guidance on the determination of these key issues, this court turned to cases of concurrent jurisdiction for illumination. In Barr {supra), the court took into consideration developing case law, along with the intent of the statute and suggested the following factors:
“(1) the Payee’s age, mental capacity, physical capacity, maturity level, independent income, and ability to support dependents; (2) purpose of the intended use of the funds; (3) potential need for *327 future medical treatment; (4) the financial acumen of the Payee; (5) whether Payee is in a hardship situation to the extent that he or she is in ‘dire straits’; (6) the ability of the Payee to appreciate financial consequences based on independent legal and financial advise; and (7) the timing of the application.” (Id. at *1.)
To be sure, such analysis is made where the payee is an adult. Nevertheless, the court is still mandated to consider whether the transfer of any part of the structure is in the payee’s best interests. Significantly, in this regard, the court must consider the potential for future medical care, the financial acumen of the payee (or more properly, the lack thereof) and whether the payee has sought alternate financial advice (i.e., from a financial consultant).
Moreover, turning to the “fair and reasonable” component of this review, courts have found discounted present values ranging from as low as 13% (Matter of Settlement Funding of N.Y. LLC v Solivan, 8 Misc 3d 1006[A], 2005 NY Slip Op 50946[U] [Sup Ct, Kings County 2005]) to 15.46% (Matter of Settlement Funding of N.Y., LLC, supra) and as much as 36.5% (when the fees and associated costs of these petitions are factored in) (see, Matter of Settlement Capital Corp. [Ballos], 1 Misc 3d 446 [2003]) to fall far from the mark of what could be deemed “fair and reasonable” to the payee.
Clearly, courts have been loathe to undermine structured settlements which sought to provide the payee with long-term financial security. Indeed, in a footnote to its decision in Bollos (supra), the court quoted from the legislative memorandum in support of the enactment of SSPA:
“The structuring of a settlement enables the settlement recipient to receive secure tax-free income over a course of years or a lifetime to provide for future medical care, . . . education, etc. In this way, the proceeds from an award are not dissipated or lost by individuals unaccustomed to managing large sums.” (Id. at 448 n 1 [emphasis supplied].)
Just as the court retains the power-to reject transfers of structured settlements by adult payees where it is not in their best interests to do so, the court is even more impelled to vigilance where infants are involved. Indeed, a review of what is in the best interests of its ward in the establishment of a structure is even more imperative.
*328 Accordingly, the court finds that the proposed infant compromise order is not in the best interests of the infant plaintiff and can only result in prejudice to her rights. As such, the proposed infant compromise order, along with the supplemental order, is denied in all respects.