Settlement Funding/Peachtree Settlement Servs. Corp. v. The Prudential Assigned Settlement Servs. Corp., No. S1471-10 CnC (Toor, J., Mar. 24, 2011)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

VERMONT SUPERIOR COURT

CHITTENDEN UNIT

CIVIL DIVISION

| | |
|---|---|
| SETTLEMENT FUNDING/PEACHTREE SETTLEMENT SERVICES CORPORATION<br> Plaintiff<br><br>v.<br><br>THE PRUDENTIAL ASSIGNED SETTLEMENT SERVICES CORPORATION, PRUDENTIAL INSURANCE COMPANY OF AMERICA, AND ERIK SHANGRAW<br> Defendant | Docket No. S1471-10 CnC |

RULING ON MOTION TO RECONSIDER

This case involves a request for court approval of a sale to the plaintiff of defendant Shangraw's interests in a structured settlement. This is an unusual species of case in which court approval is sought for an agreed-upon transfer, with the defendants being so only in name, rather than because they have any interest contrary to that of the plaintiff. The relevant statutes pose one question for the court: is Mr. Shangraw's proposed sale of his interest in future payments in his best interest?

I.  Background

Erik Shangraw is 23 years old, single, and currently resides in Colchester, Vermont.  Shangraw Aff. ¶¶ 1, 8, 9, Dec. 1, 2010; Shangraw Aff. ¶ 1, Feb. 7, 2011.  His father died in 2000 and his mother resides in Florida.  Shangraw has a younger sister in Florida but no dependents.[1]  He has "some college" education.  He is presently employed

---

[1] Shangraw's younger sister, Corey Shangraw, recently received approval from this court to transfer a portion of her structured settlement payments to Peachtree in exchange for $94,100. Settlement Funding,

with Lowe's Home Improvement and earns an income of $1,400 per month. Shangraw Aff. ¶ 8, Dec. 1, 2010. As a result of a personal injury claim related to his father's death, Shangraw became entitled to the following periodic payments:

$50,000 on January 4, 2012,
$60,000 on January 4, 2017,
$75,000 on January 4, 2022,
$100,000 on January 4, 2027, and
$180,500 on January 4, 2032.

Peachtree's Ex. A (filed Dec. 6, 2010). The periodic payments are due to Shangraw from The Prudential Assigned Settlement Services Corporation, a New Jersey corporation, and are being funded by an annuity issued by Prudential Insurance Company of America, also a New Jersey corporation. Shangraw has previously sold his rights to the first three payments to pay off debt.

Shangraw has entered into an agreement to assign the last two periodic payments ($100,000 on January 4, 2027, and $180,500 on January 4, 2032) to Peachtree in exchange for a one-time payment of $31,000. Id. Peachtree advised Shangraw to seek professional advice regarding the agreement with Peachtree, but he chose not to retain or consult with a professional. Shangraw Aff. ¶ 7, Dec. 1, 2010.[2] Shangraw intends to use the bulk of the $31,000 as follows:

$15,000 to purchase a bank-owned house in Tampa, Florida,
$8,000 to renovate the house, and

---

L.L.C. v. The Prudential Assigned Servs. Corp., No. S1322-10 CnC (Vt. Super. Ct. Dec. 27, 2010) (Toor, J.). Ms. Shangraw planned to use the $94,100 to buy a condominium in Florida and to pay tuition at the University of South Florida. Corey Shangraw Aff. ¶ 10, Oct. 23, 2010 (filed in No. S1322-10 CnC on Oct. 29, 2010).

[2] Shangraw has met with a "representative" from Merchant's Bank to discuss return rates on various investment vehicles, presumably to evaluate how much he might make if he invested the two periodic payments when he receives them in 2027 and 2032. Shangraw Aff. p. 2, Feb. 7, 2011. Shangraw has also received advice from his mother, who is an accountant. She told Shangraw to be careful about taking such a low deal. There is no indication that Shangraw has received any professional financial advice tailored to his particular circumstances.

$5,000 to purchase a used car.

Id. ¶ 10. Shangraw has conducted some online research into Florida properties in the $15,000 price range. Shangraw Aff. Ex. B, Feb. 7, 2011. He has "some experience" in house renovations and repairs, Shangraw Aff. ¶ 11, Feb. 7, 2011, and plans to start a business buying and selling "fixer-up" homes.

## II. Procedural History

Peachtree filed this action seeking, among other things, a declaration that transfer of the two periodic payments is in Shangraw's best interest. Compl. p. 6 (filed Dec. 6, 2010). Representing himself, Shangraw filed a letter asking the court to approve the proposed transaction. Answer (filed Dec. 20, 2010). Peachtree subsequently filed a motion for an order to approve the transfer. Mot. to Approve Proposed Transfer Order (filed Jan. 18, 2011). Shangraw filed a letter with the court requesting that the court approve the order. The court scheduled a hearing on the motion and took testimony from Shangraw. The court requested that Shangraw provide an additional affidavit regarding his understanding of the future investment value of the $100,000 and $180,500 payments, and also additional material on Shangraw's plan to purchase and renovate a home in Florida. Shangraw filed an additional affidavit on February 7, 2011.

After considering the evidence and Shangraw's additional affidavit, the court ruled that Peachtree's motion to approve should be denied. The court reasoned that:

> The statute the court must apply requires the court to approve the transfer only if it concludes that it is "in the best interest" of Mr. Shangraw. The court cannot agree that giving up many hundreds of thousands of dollars in exchange for such a low amount is in his best interests.

3

Entry (filed Feb. 16, 2011). Peachtree now moves for reconsideration of that ruling. Mot. to Reconsider (filed Feb. 22, 2011). Shangraw has filed a letter indicating he has no objection to Peachtree's motion, and again asking the court to approve the transfer.[3]

### III. Legal Standards

"The major grounds justifying reconsideration are 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Virgin Atl. Airways, Ltd. Nat'l Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (quoting 18 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4478 at 790); *see also* Caisse Nationale de Credit Agricole v. CBI Indus., Inc., 90 F.3d 1264, 1269 (7th Cir. 1996) ("Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence.").

Pursuant to 26 U.S.C. § 5891, Peachtree would incur tax liability in this proposed transaction unless the transaction is approved in a "qualified order." 26 U.S.C. § 5891(a), (b). A "qualified order" is a final order, judgment, or decree issued under the authority of an "applicable state statute" by an "applicable state court" which finds that the transfer is, among other things, "in the best interest of the payee, taking into account the welfare and support of the payee's dependents." Id. § 5981(b)(2) (emphasis added). Similarly, the "applicable state statute" in this case requires a finding that the transfer is

---

[3] Shangraw has represented himself in this case, and has aligned himself with counsel for Peachtree. Some courts have found similar circumstances to be at least "disquieting." In re Settlement Capital Corp., 769 N.Y.S.2d 817, 824 n.4 (N.Y. Sup. Ct. 2003). Although Shangraw has repeatedly expressed his own belief that this transaction is in his best interest, that is ultimately a determination for the court.

"in the best interest of the payee, taking into account the welfare and support of the payee's dependents." N.J. Stat. Ann. § 2A:16-66(a) (emphasis added).[4]

As another court has noted, the reason that many states have enacted statutes requiring court review is because of "concern that structured settlement 'payees,' such as [Shangraw], are especially prone to being victimized and quickly dissipating their awards." In re Petition of Settlement Funding of New York L.L.C., 761 N.Y.S.2d 816, 817 (N.Y. Sup. Ct. 2003). Thus, the statutes are designed to "protect[] payees from being taken advantage of by businesses seeking to acquire the payees' structured settlement payment rights." Id. They "discourage[] such transfers by requiring would-be transferees to commence special proceedings for the purpose of seeking judicial approval of the transfer." Id. The legislatures, in enacting these statutes, "did not intend for the courts to be mere rubber stamps." In re Settlement Capital Corp., 769 N.Y.S.2d 817, 827 (N.Y. Sup. Ct. 2003).

## IV. Discussion

### A. No Grounds for Reconsideration

Here, the court has already made a finding that the transaction is not in Shangraw's best interest. Peachtree has not argued that there has been any intervening change of controlling law. Neither does Peachtree contend that the court made a manifest error of law. Indeed, Peachtree acknowledges that the court must make a factual

---

[4] Although Vermont does not have a statute governing structured settlement factoring transactions, there is still an "applicable state statute" in this case because New Jersey is the state in which the person issuing the funding asset has its principal place of business, and New Jersey has enacted such a statute. 26 U.S.C. § 5891(b)(3)(B). The Vermont Superior Court, Chittenden Unit, Civil Division is an "applicable state court" because § 5891(b)(3)(B) applies and because Shangraw is domiciled in Vermont. Id. § 5891(b)(4)(B).

determination about whether this transaction is in Shangraw's "best interest." Mot. to Reconsider at 1 (filed Feb. 22, 2011).

Peachtree offers a lengthy discussion as to why the discount rate it is charging is "fair and reasonable." Id. at 15. To the extent Peachtree makes factual allegations in its discussion, Peachtree has not explained why this is "new evidence" that was not previously available. More importantly, Peachtree's extensive discussion of the mechanics of the structured-settlement factoring industry does not materially advance the discussion about what is in Shangraw's best interest. Taking out a loan at a low interest rate can be "fair and reasonable" as a general proposition, but whether that transaction is in the borrower's "best interest" depends on all of the borrower's circumstances. At best, Peachtree attempts to convince the court that it erred in its factual finding that this transaction is not in Shangraw's best interest. For the reasons discussed below, the court is not persuaded.

### B. Peachtree Applies the Wrong Standard

The vast bulk of Peachtree's argument appears to be in response to an erroneous perception that the court's finding was based solely on the discount rate it is offering Shangraw. In effect, Peachtree attempts to shift the inquiry in this case from Shangraw's best interest to whether this transaction is "fair and reasonable." *See* Mot. to Reconsider at 1 (filed Feb. 22, 2011) (suggesting the court should determine whether "the best interest and/or fair and reasonable standard" has been met (emphasis added)).

Peachtree does not point to a specific provision of the applicable federal or state statutes in this case for the "fair and reasonable" standard it articulates. Peachtree seems to have imported the "fair and reasonable" standard from other jurisdictions which have

6

laws similar to N.J. Stat. Ann. § 2A:16-66(a). *E.g.*, Cal. Ins. Code § 10137 ("A transfer of structured settlement payment rights is void unless a court reviews and approves the transfer and finds the following conditions are met: (a) The transfer of the structured settlement payment rights is <u>fair and reasonable</u> and in the best interest of the payee, taking into account the welfare and support of his or her dependents." (emphasis added)); N.Y. General Obligations Law § 5-1706 (requiring court to find that "the transfer is in the best interest of the payee, taking into account the welfare and support of the payee's dependants; and whether the transaction, including the discount rate used to determine the gross advance amount and the fees and expenses used to determine the net advance amount, are <u>fair and reasonable</u>." (footnote omitted; emphasis added)).

Assuming the "fair and reasonable" standard is to be read into the statutes that apply in this case, it is not the only standard that applies. *See* Cal. Ins. Code § 10137 (court must find transfer to be "fair and reasonable <u>and</u> in the best interest of the payee" (emphasis added)); <u>In re Settlement Capital Corp.</u>, 769 N.Y.S.2d 817, 824 (N.Y. Sup. Ct. 2003) ("best interest" standard is independent of the "fair and reasonable" standard, and failure of either test requires denial of a petition to approve a transfer). The critical test—which is the test explicitly mentioned in the statute that applies in this case and the test that the court applied in its ruling—is whether the transaction is in Shangraw's best interest.[5]

---

[5] For this reason, the court need not delve into the potentially complicated history, mechanics, and mathematics of the structured-settlement factoring industry or this particular transaction. Peachtree argues at length as to why its structured settlement transfer rate is competitive. Clearly the court was skeptical in its earlier ruling. Other courts, too, have expressed skepticism. *See* <u>In re Transfer of Structured Settlement Rights by Spinelli</u>, 803 A.2d 172, 179 (N.J. Super. Ct. Law Div. 2002) (finding annual discount rate of 17 to 18% "troubling," especially in difficult economic times). However, even if Peachtree is correct and its offer is "competitive," that still does not resolve the "best interest" question, which cannot be answered by looking at the discount rate in a vacuum.

In its ruling, the court stated that it "cannot agree that giving up many hundreds of thousands of dollars in exchange for such a low amount [$31,000] is in [Shangraw's] best interests." Entry (filed Feb. 16, 2011). The court was not saying simply that any case presenting this discount rate is per se not in the best interest of any structured settlement recipient. The court, having considered the facts of this particular case, and having heard Shangraw's testimony in court as well as in his affidavits, concluded that this transaction was not in his best interest.

### C. The Transaction is Not in Shangraw's Best Interest

As mentioned above, the applicable state statute here is N.J. Stat. Ann. § 2A:16-66(a), which requires a court finding that the transfer is "in the best interest of the payee, taking into account the welfare and support of the payee's dependents." New Jersey's legislature adopted this statute seeking to "safeguard the beneficiaries of such structured instruments from over-reaching practices." In re Transfer of Structured Settlement Rights by Spinelli, 803 A.2d 172, 175 (N.J. Super. Ct. Law Div. 2002). Although the statute does not define the "best interest" standard, the concept appears in numerous statutory provisions, and generally refers to optimizing the condition of the person the law is designed to protect. Id. at 176. This standard implies a case-by-case analysis with consideration of all of the facts and circumstances. Some of the factors proper for consideration are:

> the payee's age; mental and physical capacity; maturity level; ability to show sufficient income that is independent of the payments sought for transfer; capacity to provide for the welfare and support of the payee's dependents; the need for medical treatment; the stated purpose for the transfer; and the demonstrated ability of the payee to appreciate the financial terms and consequences of the proposed transfer based upon truly independent legal and financial advice.

In re Settlement Capital Corp., 769 N.Y.S.2d 817, 824 (N.Y. Sup. Ct. 2003). Application of those factors to Shangraw's case demonstrates that this transaction is not in his best interest.

While there was evidence that Shangraw has supported himself for several years, he is still only 23 years old. There has been no evidence that he suffers from any diminished mental or physical capacity. However, Shangraw has only some college education, and is by no means an expert in financial matters. *Cf.* Spinelli, 803 A.2d at 179 (concluding that transaction was in the payee's best interest, but noting that the conclusion could well be different for a payee lacking Spinelli's financial acumen as a college graduate with a degree in business, a licensed financial advisor, and with experience on Wall Street and as a mortgage broker). He has certainly not demonstrated a hardship or emergency situation under which the need for money now outweighs the detriment of the substantial discount rate Peachtree is offering.

Shangraw is currently employed and earns a monthly salary of $1,400. He has no dependents. There is no evidence of any medical emergency. Although Shangraw has had some time to consider this transaction in the course of these proceedings, he still has not received any truly independent legal or financial advice. The advice Shangraw has received from his mother, who is an accountant, was to be careful of accepting Peachtree's offer. It is also important to note that, if approved, this transaction would liquidate the remainder of Shangraw's income stream from the settlement. *Cf.* Settlement Funding, L.L.C. v. The Prudential Assigned Servs. Corp., No. S1322-10 CnC (transfer, after approval, still left Ms. Shangraw with installments of $10,000 in 2022, $50,000 in

2027, $130,000 in 2032, and $195,064.54 in 2037); Spinelli, 803 A.2d at 178 (transfer, after approval, left Spinelli with a $113,391 installment in 2019).

Also of significance is Shangraw's stated purpose for the transfer. He plans to use the funds to purchase and renovate a distressed property in Florida, and to purchase a used car. Shangraw has only "some experience" in house renovations and repair. It is not clear that he has any experience with real property transactions designed to turn a profit. Automobile purchases are notoriously poor investment vehicles, and while a used car may not depreciate as quickly as a new car, it is certainly not likely to appreciate in value. Given Shangraw's age and relative inexperience, the court concluded that exchanging a virtually guaranteed income stream[6] in order to pursue a dubious profit-making venture would not be in Shangraw's best interest. Even according to Peachtree's calculations, Shangraw's venture would have to produce a return greater than 12.11% in order to be more valuable than the income stream to which he is currently entitled. Mot. to Reconsider at 15.

Assuming Shangraw could be successful in his venture, or that it was in his best interest to move to Florida to be closer to his sister and mother, it is not clear why he cannot pursue those goals without the Peachtree transaction. Shangraw has stated that he does not have the financial resources to purchase and renovate a house and to purchase a used car. Shangraw Aff. ¶ 10, Dec. 1, 2010. Although the court does not have before it Shangraw's complete financial picture, Shangraw is a young man with his entire adult career path ahead of him. As many others have done before him, he can take on an extra

---

[6] Peachtree attempts to argue that Shangraw might never receive his periodic payments because the obligor or annuity issuer might fail or become insolvent. Mot. to Reconsider at 13, 17. To the extent this is a credible risk to Shangraw, it is also a risk to Peachtree, and clearly it is not a risk so great that Peachtree—presumably a sophisticated market actor—would avoid this transaction.

10

job, save money, and thereby finance a move to Florida and down payments on a house and car. His plan at such a young age to throw away what is essentially his father's legacy to him merely to make such steps easier and faster is not a choice the court considers wise. *Accord*, Settlement Capital Corp. v. Yates, No. 32980/05, 2006 WL 2415878, at *3 (N.Y. Sup. Ct. Aug. 14, 2006) (listing cases where court approval was denied for such things as paying off debts, buying a car, taking advantage of favorable mortgage rates, and furnishing a home).[7]

## Conclusion

Peachtree's motion to reconsider is denied.

Dated at Burlington this 24th day of March, 2011.

 

_____
Helen M. Toor
Superior Court Judge

---

[7] The court also notes that, although they would not change the court's view in this case, two additional pieces of information would be useful in future applications: (1) any information that a financial advisor agrees with Shangraw's choice, and (2) a copy of the original structured settlement agreement to assure that it does not bar assignment of payments. *See, e.g.*, 321 Henderson Receivables, L.P. v. Fontana, No. 10243-2006, 2006 WL 2818490, at *3 (N.Y. Sup. Ct. Oct. 2, 2006) ("[U]nless a proposed transferor's advisor submits an affidavit expressly stating that he or she endorses the transfer and gives specific reasons for doing so, a proposed transfer should be treated as if it had no independent advisor's endorsement"); Jay M. Zitter, Construction and Application of State Structured Settlement Protection Acts, 27 A.L.R. 6th 323, § 2 (2007) (discussing judicial treatment of anti-assignment clauses).